IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA STEINFIELD and PAUL STEINFIELD, h/w, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 14-944 |
| v. | : : | |
| EmPG INTERNATIONAL, LLC, MARIO CORDERO, DESTINO TROPICAL DT S.A., MARIO CORDERO, FERNANDO GUEVARA BEDOYA, JOSE ESPINOZA, JOHN DOES (1-10) fictitiously named presently unidentified individuals, and ABC CORPORATIONS (1-10) fictitiously named presently unidentified business entities, to be more specifically identified once revealed in discovery, | : : : : : : : : : : : : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                                                           March 19, 2015

Pennsylvania courts may exercise specific personal jurisdiction over a non-resident defendant if (1) the nature and quality of the defendant's commercial activity in the state constitutes purposeful availment of doing business in the state, (2) the cause of action is related to or arises out of the defendant's contacts with the state, and (3) the court's exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. Regarding the second, relatedness prong, the Third Circuit requires a closer and more direct causal connection than the "but-for" test. The question presented by the motion to dismiss filed in this case is whether this court has personal jurisdiction in this personal injury and breach of contract action over a Colorado limited liability company with which the plaintiffs contracted for the sale of a

Costa Rican bicycle tour by accessing the company's website from their home in Pennsylvania. As part of this question, the court must necessarily determine whether the plaintiffs' causes of action can be said to arise out of or relate to the company's contacts with Pennsylvania, where the plaintiffs unilaterally initiated the purchase of the tour. Based on the factual record, as stipulated by the parties, the court finds that plaintiffs' cause of action did not arise out of or relate to the company's contacts with Pennsylvania. Nonetheless, because the defendant EP is subject to general personal jurisdiction in the state of Colorado, the court will transfer the case to the United States District Court for the District of Colorado.

In addition to the personal jurisdiction issue, the Federal Rules of Civil Procedure require a plaintiff to serve the summons and complaint upon a defendant within 120 days of the filing of the complaint. Thus far, despite the passage of approximately 13 months since the plaintiffs filed the complaint, they have failed to serve the remaining defendants, namely the Costa Rican entities and individuals that were also allegedly responsible for the bicycle tour. The plaintiffs have not demonstrated good cause for the delay in serving these defendants; accordingly, the court will also dismiss the complaint without prejudice against these remaining defendants.

I.   ALLEGATIONS AND PROCEDURAL HISTORY

On February 12, 2014, the plaintiffs, Sandra Steinfield and Paul Steinfield, commenced this action by filing a complaint against the defendants, EmPG International, LLC ("EP"), Mario Cordero, Destino Tropical DT S.A., Fernando Guevara Bedoya, Jose Espinoza, John Does (1-10) and ABC Corporations (1-10).[1]  Compl., Doc. No. 1.  In the complaint, the plaintiffs allege that they are long-time hobby cyclists who decided to plan a bicycling tour in Costa Rica in January

---

[1] The court recognizes that there are two individuals named Mario Cordero listed in the caption of the complaint and in the allegations relating to the identification of the parties. Compl. at 2-3. Despite these duplicate references, it appears that the plaintiffs were only including one individual named Mario Cordero as a defendant. This is evidenced by the plaintiffs' reference to only one Mario Cordero throughout the remainder of the complaint. *See, e.g.*, *id.* at 17, 18.

2

2012.  Compl. at ¶¶ 12, 15.  They performed an online search for a Costa Rican bicycle tour via Google "which returned a result marketing, advertising[,] and communicating the offered service of guided bicycle tours to international locations including Costa Rica."  *Id.* at ¶ 16.  The plaintiffs clicked on this search result and were directed to experienceplus.com, EP's website.  *Id.* at ¶ 17.

Due to the plaintiffs' knowledge of issues that other people had with overseas bicycle tours, they considered multiple factors before booking the tour.  *Id.* at ¶¶ 20-41.  First, the plaintiffs wanted to ensure that EP was "a reputable, well established, [and] experienced company and was based in the United States of America."  *Id.* at ¶ 21.  Based upon EP's representations on their website, the plaintiffs formed the belief that "they were going to book an overseas bicycle tour with a reputable, responsible[,] and well established United States[] company."  *Id.* at ¶¶ 21-27.  Second, the plaintiffs were concerned with the quality of the bicycles that EP would provide for the tour.  *Id.* at ¶ 28.  EP represented to the plaintiffs that they would provide "quality" bikes in satisfactory condition.  *Id.* at ¶¶ 31, 32.  The plaintiffs relied upon EP's representations about its bikes and this information was "a substantial contributing factor in plaintiffs' decision to book the trip."  *Id.* at ¶ 33.  Finally, the plaintiffs also considered the difficulty rating of the tour because they had concerns about their abilities and whether the trail may pose any unreasonable safety risks.  *Id.* at ¶¶ 34-36.  On or about "January 4, [2012]," the plaintiffs called EP to ask about the difficulty rating of the Costa Rican tour and were advised by staff that "the tour route was . . . suitable to all experience levels."[2]  *Id.* at ¶ 36.

The plaintiffs allege that the aforementioned information EP provided to them led them to believe that the tour route would be safe, that the bicycles would be safe, and that the tour

---

[2] The date referenced in paragraph 36 of the complaint appears to be incorrect.  *See* Ex. B to Joint Stipulation of Facts with Respect to Jurisdiction at 2 (indicating that the January 4, 2004 date is a typographical error and the year should have been noted as 2012).

guides were trained and educated.  *Id.* at ¶¶ 40, 42.  Thus, they entered into a contract with EP to participate in the Costa Rican bicycling tour from February 11, 2012 to February 16, 2012.

While on the tour, the plaintiffs and the other tour participants found their bicycles to be substandard due to "faulty brakes, poorly adjusted components[,] and slipping gears."  *Id.* at ¶¶ 64-66.  While returning from an "excursion" to a coffee shop, Mrs. Steinfield was "going down a steep incline with sharp hairpin turns."  *Id.* at ¶¶ 72-76.  As she approached a sharp turn, she attempted to brake but there was no tension from the brake lines.  *Id.* at ¶ 78.  To avoid riding off the side of a cliff, she shifted her weight off the bicycle and to the ground.  *Id.* at ¶ 79.  She then slid approximately 80 feet and sustained significant injuries.  *Id.* at ¶¶ 79-80.

Based on the aforementioned allegations, the plaintiffs assert causes of action against EP under theories of negligence, negligent hiring and retention, vicarious liability, joint enterprise, agency, breach of contract, violation of the Pennsylvania Consumer Protection Law, fraud, and negligent misrepresentation.  *Id.* at ¶¶ 14-17, 19, 22-28.  Mr. Steinfield also asserts a loss of consortium claim against EP.[3]  *Id.* at ¶¶ 28-29.

To date, the plaintiffs have only served the summons and complaint upon EP and, as such, EP is the only named defendant to file a response to the complaint.  EP responded to the complaint by filing the instant motion to dismiss on May 15, 2014.  Doc. No. 7.  In the motion, EP moved to have the court dismiss the claims against it because of a lack of personal jurisdiction and the failure to state a claim under which relief can be granted.  Mot. to Dismiss of Def. EmPG Int'l, LLC d/b/a Experience Plus! Bicycle Tours at 1.

The court held an initial pretrial conference on June 10, 2014.  Doc. No. 11.  After the initial pretrial conference, the court entered a scheduling order allowing the parties to engage in

---

[3] The plaintiffs also assert claims for (1) negligence against Mario Cordero, Fernando Guevara Bedoya and Jose Espinoza (Count III), (2) negligence, vicarious liability, negligent hiring and retention, and joint enterprise against Destino Tropical S.A. DT, and (3) negligence against the fictitious defendants.  Compl. at 18-22, 29.

4

jurisdictional discovery so they could properly address EP's motion to dismiss for lack of personal jurisdiction. Scheduling Order, Doc. No. 10. The court also required the parties to submit a joint stipulation of facts with respect to jurisdiction. *Id.*

The plaintiffs filed a response in opposition to the motion to dismiss on October 22, 2014.[4] Doc. No. 13. EP filed a reply to the plaintiffs' opposition on November 5, 2014. Doc. No. 14. The parties filed a joint stipulation of facts with respect to jurisdiction on January 7, 2015. Doc. No. 17.

In addition to the briefing and submissions relating to the motion to dismiss, on December 23, 2014, the court ordered the plaintiffs to show cause why the court should not dismiss the action against the remaining named defendants for failure to serve them with the summons and complaint within the 120-day period provided by Rule 4(m) of the Federal Rules of Civil Procedure. Doc. No. 15. The plaintiffs timely filed a letter in response to the order to show cause on January 15, 2015. Doc. No. 18.

The court held oral argument on the motion to dismiss and order to show cause on January 16, 2015. Doc. No. 19. On March 6, 2015, and March 12, 2015, EP, on its and the plaintiffs' behalf, filed exhibits to the joint stipulation of facts relating to the motion to dismiss for lack of personal jurisdiction. Doc. Nos. 20. EP also submitted a response to the court's inquiry to clarify some of the information in the stipulation.[5] Doc. No. 21. Both the motion to dismiss and the service-related issues raised in the order to show cause are now ripe for disposition.

---

[4] Although the June 10, 2014 scheduling order required the plaintiffs to file a response to the motion to dismiss by September 12, 2014, the court granted the plaintiffs' request to allow them to file a response by October 22, 2014. Scheduling Order; Order, Doc. No. 12.

[5] Although EP filed this document, it specifically indicated the plaintiffs' approval of its responses. *See* Ex. B to Joint Stipulation of Facts with Respect to Jurisdiction at 1-2, Doc. No. 21.

## II.   DISCUSSION

### A.   <u>Motion to Dismiss – Lack of Personal Jurisdiction</u>

In the motion to dismiss, EP argues that the court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[6] Mem. of Law in Supp. of the Mot. to Dismiss of Def. EmPG Int'l, LLC, d/b/a Experience Plus! Bicycle Tours at 6-14 ("EP's Supp. Br."), Doc. No. 7.  In response to EP's argument, the plaintiffs contend that the court has specific jurisdiction over EP under the Pennsylvania long-arm statute and under a minimum contacts framework.  Mem. of Law in Opp'n to Def. EmPG Int'l, LLC d/b/a Experience Plus! Bicycle Tours' Mot. to Dismiss ("Pls.' Opp'n") at 8-12.

#### 1.   **Standard of Review**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted).  If the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* (citation omitted).  The plaintiff satisfies the burden to present a *prima facie* case for the court to exercise personal jurisdiction by "establishing with reasonable particularity

---

[6] As indicated above, EP also moved to dismiss the complaint under Rule 12(b)(6) because (1) all of the plaintiffs' causes of action are barred because they executed assumption of risk and waiver of liability forms; (2) the claims for negligence (Count I), negligent hiring and retention (Count II), negligent misrepresentation (Count XIV), and loss of consortium (Count XV) are barred by the "gist of the action" doctrine under Pennsylvania law and the "economic loss doctrine" under Colorado law; (3) the plaintiffs cannot plead the necessary elements of vicarious liability (Count IV), and agency (Count IX) under either Pennsylvania or Colorado law because EP did not have control or the right to control the alleged agents; (4) the plaintiffs have not properly pleaded claims for a violation of Pennsylvania's Consumer Protection Law (Count XII) or for fraud under Pennsylvania or Colorado law (Count XIII) because they failed to allege how or why EP knew the alleged misrepresentations were false; and (5) the plaintiffs have not pleaded sufficient facts necessary to allege joint enterprise (Count VIII) or breach of contract (Count X).  EP's Supp. Br. at 14-30.  Because the court resolves the motion to dismiss under Rule 12(b)(2), the court need not address any of these Rule 12(b)(6) arguments.

sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted).

"[I]f the Court conducts an evidentiary hearing, the plaintiff has the more substantial burden of proving that personal jurisdiction is proper by a preponderance of the evidence." *Atiyeh v. Hadeed*, No. CIV.A.04-2621, 2007 WL 853816, at *4 (E.D. Pa. Mar. 19, 2007) (citations omitted). "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Thus,

> once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [T]herefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.

*Id.* (citation omitted).

As indicated in the recitation of the procedural history, although the court did not hold an evidentiary hearing in this case, the court did order the parties to produce a joint stipulation of facts with respect to jurisdiction. The parties submitted the stipulation of facts and, after further inquiry by the court, submitted additional exhibits and responses to clarify the information in the stipulation. Neither party has suggested that the joint stipulation of facts is inadequate to resolve the personal jurisdiction inquiry, or that the court must conduct further development of the record. Accordingly, because the facts are undisputed, the court will treat the joint stipulation as it would the findings after an evidentiary hearing, and hold the plaintiffs to the preponderance of the evidence standard.[7]

---

[7] It appears that regardless of whether the court holds an evidentiary hearing, the plaintiff would still have to prove that jurisdiction is proper by a preponderance of the evidence. *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 476 (3d Cir. 2011) ("Even if the plaintiff meets this prima facie standard, . . . the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence.").

## 2. Analysis

Under Federal Rule of Civil Procedure 4(k)(1)(A), a district court generally exercises personal jurisdiction according to "the law of the state where the district court sits." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990) (citation omitted); *see* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"). As this court sits in Pennsylvania, Pennsylvania law applies and, as such, the court must examine Pennsylvania's long-arm statute to determine whether the court has personal jurisdiction over EP. Pennsylvania's long-arm statute permits Pennsylvania state courts to exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b).

> Regarding the types of personal jurisdiction,
>
> > [t]wo types of personal jurisdiction exist: general and specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction exists when the plaintiff's claim arises out of the defendant's "continuous and systematic" contacts with the forum state. General jurisdiction exists even if the cause of action is unrelated to the defendant's activities in the forum state. Specific jurisdiction exists when the plaintiff's claim arises out of the defendant's activities within the forum such that the defendant could reasonably anticipate being haled into the state's courts. *Vetrotex Certainteed Corp. v. Consl. Fiber Glass Prods. Co.*, 75 F.3d 147 (3d Cir. 1995).

*Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 210 (3d Cir. 2013).

Here, although ordinarily the court would first examine whether the court has general jurisdiction over EP, neither party argues that there is a sufficient basis for the court to exercise general jurisdiction over EP. Therefore, the court's analysis is focused on whether specific

jurisdiction is present.  To determine whether specific jurisdiction exists, the plaintiffs must establish

> the existence of minimum contacts between the defendant and the forum state.  To do so, plaintiff must satisfy three steps.  First, the plaintiff must show that the defendant "has purposefully directed its activities" at the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  Second, the litigation must "arise out of or relate" to at least one of those activities.  *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994).  If these two requirements are met, the court may then consider whether the exercise of jurisdiction would "comport with fair play and substantial justice."  *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2174.

*Id.*  For the final prong, an exercise of specific jurisdiction that "'comports with traditional notions of fair play and substantial justice,'" means that the defendant "'should reasonably anticipate being haled into court'" in that forum.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In addressing the three-pronged test for specific jurisdiction, this court has adopted the following relevant facts from the parties' joint stipulation of facts:  EP is a limited liability company that offers bicycling tours in various international locations.  Joint Stipulation of Facts With Respect To Jurisdiction ("Stip. of Facts") at ¶ 1.  EP was formed in accordance with the laws of Colorado, where its worldwide headquarters is located.  *Id.* at ¶¶ 2-3.  EP does not have physical land or property within Pennsylvania, has never filed tax returns in Pennsylvania, is not licensed or incorporated to do business in Pennsylvania, does not maintain an agent in Pennsylvania, does not file administrative reports with any agency or department within Pennsylvania, and does not offer any bicycling tours that take place in Pennsylvania.  *Id.* at ¶¶ 4-8, 18.  Consequently, the plaintiffs' rely upon EP's online activities and EP's contacts with

Pennsylvania that are related to the sale of the plaintiffs' bicycle tour as a basis for exercising specific personal jurisdiction over EP in Pennsylvania.  Pls.' Opp'n at 10-12.

With regard to these contacts, the plaintiffs used EP's website, experienceplus.com, to contact EP, select a bicycle tour, provide personal information, make payments, and acknowledge and review the terms and conditions listed on the website.  *Id.* at ¶ 13.  EP's website "provided information to its customers about packing, preparations for the bicycle tour, [and] purchase of trip cancellation and interruption insurance."  *Id.* at ¶ 14.  EP "communicated with the plaintiffs via e-mail, spoke with Plaintiff via telephone, and mailed one piece of correspondence, dated January 4, 2012[,] all related to the Costa Rica bicycle tour."  *Id.* at ¶ 15.  EP "sold 17 tour trips to Pennsylvania residents between December 2011 and February 2014" and derived $65,051 in revenue from those sales.  *Id.* at ¶¶ 9-10.  EP "has had customers in Pennsylvania that have purchased more than one tour," and one particular Pennsylvania customer purchased five tours.  *Id.* at ¶ 11.

The plaintiffs argue that EP purposefully availed itself of doing business in Pennsylvania through its prior 17 sales of tours to Pennsylvania residents and its conduct in negotiating the contract with the plaintiffs.  Pls.' Opp'n at 10-12.  As for the prior 17 sales, even if this conduct constitutes purposeful availment by EP, these prior sales to Pennsylvania residents are insufficient to establish specific jurisdiction because they fail the second prong of the test, which requires that the cause of action arise out of, or be related to, the EP's forum-related contacts.  *Rocke*, 541 F. App'x at 210.  In the Third Circuit, this relatedness inquiry begins with determining whether there is but-for causation, but does not end there, as "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007).  The inquiry is fact-

sensitive, and should "hew closely to the reciprocity principle upon which specific jurisdiction rests." *Id.*

The 17 prior sales do not satisfy the but-for test, as the plaintiffs do not allege, and the facts do not demonstrate, that but for the prior 17 sales, they would not have purchased their bicycle tour.  If EP had engaged in an advertising or marketing campaign directed at Pennsylvania residents, and this campaign had caused the plaintiffs, and all (or even some) of the prior 17 Pennsylvanian purchasers to book bicycle tours, then a causal chain might exist.  But those are not the facts of this case.

In addition, although the plaintiffs' rely on *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), as persuasive authority in support of their contention that their claims relate to EP's conduct in Pennsylvania, their reliance is misplaced.  In *Zippo*, the district court aggregated the defendant's prior sales to Pennsylvania residents to establish that the defendant was "doing business" in Pennsylvania and therefore was subject to the jurisdiction of Pennsylvania's courts.  952 F. Supp. at 1127.  *Zippo* was, however, a trademark infringement and dilution case in which the plaintiff's cause of action *did* arise out of each of those prior sales.  *Id.*  Those are not the facts of this case.

Moreover, the court cannot simply rely on the existence of these 17 prior, unrelated sales to establish personal jurisdiction, as doing so would conflate the distinct analyses of specific jurisdiction and general jurisdiction.  The 17 prior, unrelated contacts might be relevant to a general jurisdiction analysis, which requires that a defendant's "affiliations with the State [be] so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  But, "[i]f the defendant's contacts fall short of that standard," as they do here,  "then at least one contact must give rise or

relate to the plaintiff's claim." *O'Connor*, 496 F.3d at 321.  None of the prior 17 sales gave rise to the plaintiffs' claims.

Turning to the contacts between EP and Pennsylvania as they relate to the sale of the plaintiffs' bicycle tour, the undisputed facts demonstrate that the plaintiffs used EP's website to contact EP, select a bicycle tour, provide personal information, make payments, and acknowledge and review the terms and conditions listed on the website.  Additionally, EP's website "provided information to its customers about packing, preparations for the bicycle tour, purchase of trip cancellation and interruption insurance."  Stip. of Facts at ¶ 14.  EP also "communicated with the plaintiffs via e-mail, spoke with Plaintiff via telephone, and mailed one piece of correspondence, dated January 4, 2012[,] all related to the Costa Rica bicycle tour."  Stip. of Facts at ¶ 15.

The plaintiffs argue that EP's website was commercially interactive enough to show that it purposefully availed itself of doing business in Pennsylvania.  In the context of Internet sales, "the propriety of exercising jurisdiction depends on where on a sliding scale of commercial interactivity the web site falls." *Toys "R" Us, Inc.*, 318 F.3d at 452.  "[T]here must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* at 454.  Here, the plaintiffs used EP's website to select the tour, provide personal information, to provide payment, and to acknowledge and review terms and conditions.  Stip. of Facts at ¶ 13.  This clearly evinces an interactive website of a commercial nature.  Furthermore, EP knew it was interacting with Pennsylvania residents when it processed the plaintiffs' credit card payment for the tour and mailed the confirmation letter to the plaintiffs' home in Pennsylvania.

Despite finding that EP purposefully availed itself of doing business in Pennsylvania, the court cannot conclude that plaintiffs' cause of action for breach of contract is related to, or arises out of, EP's contacts with the forum in negotiating the contract. As with the 17 prior, unrelated sales, EP's actions concerning the contract do not meet the but-for test. Given that the plaintiffs initiated the communications that lead to the sale of the tour with EP, it cannot be said that but for EP's contacts with Pennsylvania, the plaintiffs would not have negotiated a contract with EP. EP did not reach out to the plaintiffs, such as through specifically targeting the plaintiffs with solicitations by way of mailings or phone calls. *Contra O'Connor*, 496 F.3d at 323 (finding the plaintiff's claims arose out of the defendant's contacts with the forum where the plaintiff purchased defendant's services as a result of the defendant's solicitations, which involved mailings and phone calls to plaintiff); *see also Rocke*, 541 F. App'x at 211 (determining that specific jurisdiction did not lie even when defendant "sent an unspecified amount of advertising material to [the plaintiffs] via mail and emails" because these contacts were of an "impersonal, irregular and general" nature and did not serve to "cultivate a relationship with the [plaintiffs or] to solicit additional business directly from them"). Here, the plaintiffs performed an online search for Costa Rican bicycle tours, and EP's website came up on the search results. The plaintiffs then proceeded to gather information from EP's website, and called EP to ask a question about the tour's difficulty, before booking the tour. There are no allegations that EP actively sought out the plaintiffs' business. While it is true that but for the plaintiffs contacting EP, they would not have purchased a tour, this does not suffice to hale EP into court in Pennsylvania.

Because the court finds that EP's Pennsylvania contacts which led to the formation of the contract for the sale of the bicycle tour do not relate to the plaintiffs' cause of action for breach

13

of contract, the court must also find that the rest of the plaintiffs' claims against EP also do not arise out of its Pennsylvania contacts.[8] As stated above, the only contacts that EP had with Pennsylvania concerned the purchase of the bicycle tour. The remaining claims for negligence, negligent hiring and retention, vicarious liability, joint enterprise, agency, violation of Pennsylvania Consumer Protection Law, fraud, negligent misrepresentation, and loss of consortium, are directly and closely related to the obligations under the contract for the sale of the tour. Thus, if personal jurisdiction cannot be found for the breach of contract claim, it cannot be found as to the remaining causes of action. *Contra O'Connor*, 496 F.3d at 323 (holding that where personal jurisdiction was proper due to non-resident defendant's contacts with Pennsylvania in contracting services at an out-of-state spa, personal jurisdiction could also be found over the plaintiffs' negligence claim arising out of a slip and fall at the spa, because the negligence claim arose from defendant's Pennsylvania contacts).

Before dismissing the complaint, however, the court will evaluate whether the interests of justice warrant transferring the case to a jurisdiction where personal jurisdiction lies. In this regard, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed[.]" 28 U.S.C. § 1631. Despite the plaintiff not raising the possibility of transfer, the court may *sua sponte* cure a jurisdictional defect by transferring the case under section 1631. *See Faulkenburg v. Weir*, 350 F. App'x 208, 209 (10th Cir. 2009); *see also Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (pointing out that district court "had authority, if it found that it lacked *in personam* jurisdiction," to transfer

---

[8] "[W]hile personal jurisdiction analysis usually must be conducted separately for each plaintiff, the analysis for loss of consortium claims is identical to that for the underlying claim." *Simons v. Arcan, Inc.*, No. CIV.A. 12-01493, 2013 WL 1285489, at *2 (E.D. Pa. Mar. 28, 2013) (citing *O'Connor*, 496 F.3d at 317 n.3)).

action to another district court with personal jurisdiction over defendants, and recognizing that district court had ability to do so *sua sponte*). The court finds that it is in the interest of justice to transfer this case to a district where a court may properly exercise personal jurisdiction over EP, "rather than dismiss the case and force the [p]laintiffs to refile and restart in another jurisdiction." *Farber v. Tennant Truck Lines, Inc.*, No. CIV.A. 14-5028, 2015 WL 518254, at *13 (E.D. Pa. Feb. 9, 2015). EP is incorporated in Colorado and has its worldwide headquarters there; as such, it is subject to general personal jurisdiction there. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] ... bases for general jurisdiction." (internal quotation marks and citation omitted)). Accordingly, the court will transfer this case to the United States District Court for the District of Colorado.

### B.     Failure to Serve the Remaining Defendants

Rule 4(m) of the Federal Rules of Civil Procedure provides that a plaintiff has 120 days to serve the summons and complaint upon any named defendants. Fed. R. Civ. P. 4(m). If the plaintiff fails to effect service within 120 days, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice or order that service be made within a specified time." *Id.* Despite Rule 4(m) language allowing for dismissal, "if the plaintiff shows good cause for the failure [to serve the summons and complaint], the court must extend the time for service for an appropriate period." *Id.*

As discussed in the court's December 23, 2014 order to show cause, the plaintiffs commenced this action on February 12, 2014, yet, to date, have only served EP with the summons and complaint. *See* Doc. No. 15. The court indicated that the plaintiffs should respond by either proving that they served the defendants within the 120-day period, or by showing good

cause for the failure to effect service. *Id.* In response, the plaintiffs conceded that they had not served the other defendants. *See* Letter in Resp. to Order to Show Cause, at 1, Doc. No. 18. They stated that they initially attempted to effect service on the remaining named defendants, who are all located in Costa Rica, by way of a waiver of service, but these defendants did not execute the waiver of service. *Id.* The plaintiffs indicated that personally serving these defendants in Costa Rica would be costly, and that "in light of the pending motion to dismiss and the uncertainty of the Court's decision," the plaintiff requested that the court first rule on the motion to dismiss before dismissing the remaining named defendants. *Id.* at 1-2. The court finds that the cost of serving the Costa Rican defendants does not constitute good cause for failure to serve the summons and complaint within 120 days.[9] Accordingly, and in light of the court's decision to grant EP's motion to dismiss, the court will dismiss the action against the remaining named defendants without prejudice pursuant to Rule 4(m).

### III.  CONCLUSION

After examining the allegations in the complaint and the exhibits attached thereto, the parties' submissions, including the joint stipulations of facts with respect to jurisdiction, and after hearing argument from the parties, the court finds that exercising personal jurisdiction over EP is improper. Nonetheless, in the interests of justice, the court will transfer this case to the United States District Court for the District of Colorado under 28 U.S.C. § 1631. Additionally, the court dismisses the action without prejudice against the defendants, Fernando Guevara Bedoya, Mario Cordero, Destino Tropical DT S.A., and Jose Espinoza, under Rule 4(m) of the Federal Rules of Civil Procedure for the plaintiffs' failure to serve these defendants within 120

---

[9] Because the remaining defendants failed to execute the waivers of service, it is possible that the plaintiffs could have recovered the costs they later incurred in effecting service if these defendants did not have good cause for failing to sign and return the waivers. Fed. R. Civ. P. 4(d)(2).

days of the filing the complaint and the absence of a showing of good cause for this failure to serve.

An appropriate order follows.

BY THE COURT:

*/s/ Edward G. Smith*
EDWARD G. SMITH, J.